**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

ARTURO GARCIA,

      Debtor.

_____/

PAYABILITY COMMERCIAL
FACTORS, LLC,
a Texas limited liability company,

      Plaintiff

vs.

ARTURO GARCIA,

      Defendant

_____/

Case No. 17-23250-RBR

Chapter 7

Adv. No. _____

## COMPLAINT

Plaintiff, PAYABILITY COMMERCIAL FACTORS, LLC, a Texas limited liability company ("Plaintiff"), by and through undersigned counsel, sues Defendant, Arturo Garcia (the "Debtor") and alleges:

### PARTIES, JURISDICTION AND VENUE

1.    The Court has jurisdiction in this proceeding pursuant to 28 U.S.C. §1334(b), §157(b)(2)(I) and 11 U.S.C. §523(c), and Admin. Order 2012-25 of the United States District Court for the Southern District of Florida, referring bankruptcy matters to this court.

2.    This is a core proceeding.

2.    Plaintiff is a creditor in this case.

3.    Defendant is the debtor in this Chapter 7 case and therefore venue is proper.

4.      Debtor filed his petition on October 31, 2017 (the "Petition Date").

## GENERAL ALLEGATIONS

5.      Plaintiff is in the business of purchasing receivables from various types of businesses, which is commonly known as "factoring".

6.      On or about April 16, 2017, Plaintiff and Dade Broward Fire Safety, Inc. ("DBFS") entered into that certain Supplier Early Payment Agreement (the "Supplier Agreement"), a copy of which is attached hereto as Exhibit "A".

7.      Upon information and belief, Debtor was the sole shareholder, employee and officer of DBFS.

8.      Pursuant to the Supplier Agreement, DBFS agreed to offer Available Receivables[1] owed by one or more Plaintiff's Approved Marketplaces for sale to Plaintiff for its purchase consideration.

9.      Plaintiff agreed that on each Purchase Date, for those Available Receivables of each Marketplace so offered which Plaintiff decides, in its discretion, to accept for purchase, mark computerized listings within the Plaintiff System to show such accounts as included within the Purchased Receivables sold to Plaintiff.

10.     On April 18, 2017, Debtor executed that certain Guarantee Agreement in favor of Plaintiff, guaranteeing the obligations of DBFS to Plaintiff under the Supplier Agreement (the "Guaranty"), a copy of which is attached hereto as Exhibit "B".

11.     From April 19, 2017 through April 30, 2017, Plaintiff purchased certain receivables from DBFS totaling $21,409.23 pursuant to the Supplier Agreement, as set forth on the transaction summary attached hereto as Exhibit "C".

---

[1]      All capitalized terms not otherwise defined herein shall have the same meaning as ascribed to them in the Agreement.

12.     DBFS failed to repay any of the $21,409.23 to Plaintiff.

13.     Plaintiff duly transferred to DBFS the grand total of $21,409.23 for the purchase of certain receivables from DBFS pursuant to the terms of the Supplier Agreement and Guaranty (the "Funds").

14.     Debtor failed to repay any the Funds to Plaintiff.

15.     As of the Petition Date, Debtor remained in possession of the Funds.

16.     Debtor took the Funds and refused to repay same.

17.     Prior to the Petition Date, Plaintiff demanded that the Debtor return the Funds, but Debtor refused such demand.

## COUNT I

### [Objection to Dischargeability of Debt under 11 U.S.C. § 523(a)(6)

18.     All allegations in paragraphs 1 through 17 are incorporated by reference in this count.

19.     Pursuant to § 812.014, Fla. Stat.:

[a] person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a)   Deprive the other person of a right to the property or a benefit from the property.
(b)   Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

20.     Debtor knowingly obtained the Funds with criminal intent to appropriate the property for his own use.

21.     Pursuant to § 772.11, on July 12, 2017, Plaintiff dispatched a written demand to Debtor, a copy of which is attached hereto and incorporated herein as Exhibit "D".

3

22.     Plaintiff suffered damages as the result of the theft by Debtor, and incurred monetary damages in the amount of $64,227.69, plus attorneys' fees.

23.     The injury to Plaintiff by the Debtor was willful and malicious.

24.     The injury to Plaintiff by the Debtor was deliberate or intentional, with the Debtor either intending the resulting injury or intentionally taking action that the Debtor knew was substantially certain to cause the injury to Plaintiff.

25.     Accordingly, Plaintiff's debt should be deemed non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

**WHEREFORE**, Plaintiff seeks the entry of a judgment determining that Debtor's debt to Plaintiff is nondischargeable and granting such other relief as is just.

## COUNT II

### [Objection to Discharge Pursuant to 11 U.S.C. § 727(a)(3)]

26.     All allegations in paragraphs 1 through 17 are incorporated by reference in this count.

27.     On January 12, 2018, Plaintiff filed and served its Re-Notice of Taking Rule 2004 Duces Tecum of the Debtor requesting Debtor produce documents recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained (the "Document Request") [Main Case ECF No. 21].

28.     On February 20, 2018, Debtor filed and served his Response to the Document Request (the "Response") [ECF No. 29].

29.     As set forth in paragraph 2 of the Response, Debtor failed to produce *any* of his credit card statements in response to the Document Request.

30.     Plaintiff has never received *any* of the credit card statements.

31.     As set forth in paragraphs 18 and 31 of the Response, Debtor failed to produce *any* of his tax returns for the past 5 years because he allegedly has failed to file *any* tax returns in the past 5 years.

32.     Plaintiff has never received *any* of tax returns from the Debtor.

33.     Debtor has failed to keep or preserve any recorded information, documents, records or papers, from which the Debtor's business transactions might be ascertained.

34.     Debtor's failure to keep or preserve any recorded information, documents, records or papers concerning his credit cards and failure to file any tax returns for the past 5 years was not justified under all of the circumstances of the case.

35.     Accordingly, Debtor should be denied his discharge pursuant to 11 U.S.C. § 727(a)(3).

**WHEREFORE**, Plaintiff seeks judgment in its favor and against Debtor, denying Debtor's discharge pursuant to 11 U.S.C. § 727(a)(3), for costs of suit and for such other and further relief as the Court deems just and proper.

Dated:  April 22, 2018          Respectfully Submitted,

**LAW OFFICE OF MARK S. ROHER, P.A.**
*Counsel for Plaintiff*
5989 Stirling Road
Fort Lauderdale, Florida 33314
Email:  mroher@markroherlaw.com
Telephone:  (954) 353-2200
Facsimile:  (877) 654-0090

By:___*/s/ Mark S. Roher*_____
          Mark S. Roher
          Florida Bar No. 178098

# EXHIBIT "A"

## SUPPLIER EARLY PAYMENT AGREEMENT

THIS SUPPLIER EARLY PAYMENT AGREEMENT, dated for reference as of _____ is by and between **PAYABILITY COMMERCIAL FACTORS, LLC,** a Texas limited liability company with offices at 10955 Lowell, Suite 800, Overland Park, KS 66210 ("PCF") and __Dade Broward Fire Safety, INC._____, a company formed under the laws of _____FL_____, with its offices at __20340 NE. 15 CT_____ Miami_____ FL_____ 33179_____ US_____ (the "Supplier", variously, "Seller"); together with PCF, the "Parties", each being a "Party").

4/16/2017  |  15:14  PM  PDT

## Purchase and Sale of Receivables

In order provide an early payment program and thus create liquidity and improve cash flow for Supplier, in accordance with the *Standard Terms And Conditions of Supplier Early Payment Agreement dated April 8, 2016* which is incorporated by reference as if fully set forth herein and is also linked at http://www.payability.com/supplier_terms (the "Terms"), based on the Funding Particulars, Supplier will, during each Funding Period, offer Available Receivables owed by one or more PCF Approved Marketplaces for sale to PCF for its purchase consideration. *As more fully provided in the Terms* PCF will, on each Purchase Date, for those Available Receivables of each Marketplace so offered which PCF decides, in its discretion, to accept for purchase, mark computerized listings within the PCF System to show such accounts as included within the Purchased Receivables sold to PCF.

**PCF shall, depending upon the Funding Particulars for each Approved Marketplaces, either deposit its initial Advance thereon to Supplier's designated bank account, or make available its initial Advance thereon to Supplier's Payability Account in which case Supplier may then deposit Advance either to a pre-funded MasterCard or directly to Supplier's bank account through the Payability System.**

The balance of the Purchase Price for the Purchased Receivables will be paid by PCF to Supplier on a Batch basis, *as more fully set forth in the Terms*, when and after PCF has collected from the respective Marketplaces, charged back to Supplier, or otherwise credited all of the Purchased Receivables purchased by PCF in the particular Batch and such Batch thereupon closes. *As also provided more fully in the Terms*, PCF's purchase shall include, together with the Purchased Receivables, all the other Conveyed Property related thereto including, without limitation, all cash and non-cash Proceeds and products of the Purchased Receivables as well as all Supplier's rights arising from the Goods and Services delivered by Supplier with respect thereto and represented thereby.

The Parties intend to accomplish a "true sale" of the Purchased Receivables and the Conveyed Property to PCF. As sole and absolute owner of the Purchased Receivables and other Conveyed Property PCF shall have the right to collect and otherwise deal with such property as PCF deems fit, in its sole discretion.

## Funding Particulars

In addition to and without limitation of the Terms, for all purposes of this Agreement the Funding Particulars shall be provided for in the Payability System, if and by being linked at: https://supplier.payability.com, which Supplier accesses via its secure log-in. Supplier will be prompted within the Payability System to approve or reject any Funding Particulars that affect Factoring Commissions or Advance Rate.

## Certain Representations, Warranties, Covenants and Agreements

Without limitation of any of foregoing or of the Terms:

**A.** Supplier represents, warrants and covenants to PCF, on each Purchase Date that PCF accepts for purchase any Purchased Receivables under this Agreement, that:

1. Supplier's representations, warranties, duties and covenants set forth in this Agreement are and will be all true and correct, both before and after giving effect to the purchase and sale of the Purchased Receivables at such times.

2. Supplier has satisfied all duties, covenants, representations, warranties and undertakings of Supplier set forth in this Agreement and under all other documents and instruments delivered by Supplier to PCF in connection therewith (collectively, the "Funding Facility").

1

3. There is no Default under this Agreement or under any other document or instrument included within the Funding Facility.

4. PCF shall have no duty or obligation to perform, in any respect, any contracts or duties of Supplier to any Marketplace with respect to any Purchased Receivables owed by such Marketplace.

5. The correct, and exact, legal name of the Supplier is the name of Supplier as shown on page 1 of this Agreement.  Supplier is not the successor to, a continuation of, or the assignee of any third person.

6. This Supplier Early Payment Agreement and the other documents and instruments comprising the Funding Facility are all in full force and effect, without waiver, defense, counterclaim or offset by any Party thereto.

7. Supplier's terms of sale between Supplier and the respective Marketplace, as to Available receivables offered to PCF for its purchase consideration hereunder do not obligate PCF to arbitrate disputes between Supplier and the Marketplace.

8. For all invoices or Receivables that will be offered for sale to PCF, Supplier represents, warrants and covenants there has been no pre-payment, payment dispute, clawback, unreported offset or contra accounting item, or an actual or purported terms of service violation from any Marketplace.  This includes, but is not limited to; a) co-op charges that will be greater than 10% of gross sales, b) media, advertising, or promotional spending that will cause a reduction in payment from any Marketplace, or c) any payment offset that is not clearly reported in the Marketplace reporting interface provided to PCF.  Furthermore, Supplier agrees to immediately report to PCF the existence of any of the foregoing if they arise at any point during the Term of this Agreement.

Initials: _____

**B.** By purchasing the Purchased Receivables and the other Conveyed Property from Supplier under this Agreement PCF does not assume any obligation of Supplier to Marketplace or any other person in respect thereto.

**C.** PCF shall have all the rights of an unpaid supplier or provider of the goods and services rendered by Supplier to the various Marketplaces which gives rise to and creates the Purchased Receivables and the other Conveyed Property including, without limitation, rights of stoppage in transit, reclamation and replevin.  Supplier shall mark its books and records to show that it has sold the Purchased Receivables and other Conveyed Property to PCF in a manner satisfactory to PCF and as required by the Terms.

**D.** Any invoices and other statements delivered by Supplier to any Marketplace evidencing any Purchased Receivables and all copies thereof shall clearly state that the Purchased Receivables owed by such Marketplace have been sold and assigned by Supplier and are payable only to PCF, provided, however, that Supplier's failure to deliver such invoices as so marked shall not affect the sale and assignment of the Purchased Receivables and the other Conveyed Property to PCF under this Agreement. During the Term of this Agreement Supplier shall not sell, negotiate, pledge, assign or grant a security interest in its Receivables to any Person other than PCF without PCF's prior written consent.

**E.** Supplier, by its signature below, further consents to use of electronic records, electronic signatures and electronic services for all purposes of this Agreement and for all purposes of the Payability System, which terms as accessed by Supplier via its secure log-in, are linked at: https://supplier.payability.com, as such linked terms may hereinafter be later amended, from time to time.

**F.** As detailed further in the Terms, Supplier may terminate the Supplier Factoring Agreement by accessing the Payability System and disabling its account.  In order to ensure accounting integrity, termination will be effective 90 days after  such termination is requested by Supplier.

**G.** Further evidence of the sale and assignment of the Purchased Receivables and the other Conveyed Property to PCF under this Agreement is and shall be provided and displayed in the Payability System.

**H.** Supplier agrees to later execute, as set forth in the Terms, such further documents and instruments as PCF may hereafter request, from time to time, to further evidence the sale of Purchased Receivables and other Conveyed Property by Supplier to PCF under this Agreement.

**I.** This Agreement, subject to its various terms and conditions, including the Terms, becomes effective and legally binding between the Parties upon their mutual execution of this Agreement below.  The Parties agree and stipulate that this Agreement is governed by Texas law and that all signatures may be made electronically.

This document, together with all exhibits and schedules referenced or incorporated herein, including the Terms, as in effect on the date hereof, as one or more of such documents, exhibits and schedules may be later amended, from time to time (collectively, the "Supplier Early Payment Agreement") sets forth the terms and conditions on which, among other things, the Purchased Receivables and the other Conveyed Property are purchased and sold between the Parties as aforesaid.  All terms with initial capital letters not otherwise defined herein have the meaning set forth in the Terms.

**Please read all pages of this Agreement (including the Terms and all other associated exhibits and schedules) carefully. The person signing below for the Supplier represents that the Supplier's signature below and all its initials as aforesaid are duly authorized by all required corporate, limited liability company or partnership action and authority, as the case may be, if Supplier is such a corporation, limited liability company or partnership.**

**IN WITNESS WHEREOF**, intending to be bound hereby, the Parties, on the dates below, have set their respective hands.

PCF:

SIGN YOUR NAME BELOW:

PRINT YOUR NAME BELOW:

Keith Smith

Title: CEO

Date: 4/16/2017  |  15:14 PM PDT

SUPPLIER:

SIGN YOUR NAME BELOW:

DocuSigned by:

Arturo Garcia

30332C0A80A37AA5

PRINT YOUR NAME BELOW:

Arturo Garcia

Its: duly authorized signatory

Date: 4/16/2017  |  15:14 PM PDT

# EXHIBIT "B"

## GUARANTEE AGREEMENT

This Account Validity Guarantee (the "Guarantee"), is made between __Arturo Garcia__ ("Guarantor") and PAYABILITY COMMERCIAL FACTORS, LLC ("PCF") on __4/18/2017 | 05:51__ AM PDT

### WHEREAS

A.    __Dade Broward Fire Sasfety, INC.__ ("Supplier") and PCF have entered, or propose to enter, into a Supplier Early Payment Agreement (the "Agreement").;

B.    Guarantor is a principal of Supplier, and controls certain operations of Supplier;

C.    Supplier, with the assistance of Guarantor, provides goods or services to various marketplaces as defined in the Supplier Early Payment Agreement (each, a "Marketplace");

D.    Supplier may have other entities in which it is a shareholder, or controls partially or wholly ("Affiliated Entities");

E.    To induce PCF to advance payment under the Agreement, Guarantor makes the covenants and warranties herein; and

F.    Unless otherwise indicated, capitalized words used herein have the meaning set forth in the Supplier Early Payment Agreement and the Standard Terms And Conditions (located at http://www.payability.com/supplier_terms).

NOW, THEREFORE, in consideration for the material covenants, representations and warranties made by Guarantor to PCF, and PCF's consideration to enter into the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## Guarantor Covenants, Representations and Warranties

Truthful Statements.  All the information and statements made to Payability under the Agreement (including the Standard Terms and Conditions) are and shall be complete and accurate in all material respects.

Payment Owed by Marketplace.  The Marketplace(s) owe(s) Supplier the amounts reported by Supplier to PCF pursuant to the Agreement, and the Guarantor has no knowledge of any setoff or defense by the Marketplace which would alter or reduce the amounts reported by Supplier as due and owing.

No Affiliated Earnings.  All of the earnings generated in the marketplace are and will be generated from third parties, and not by any Affiliated Entities.

No Prepayments.  Supplier or any Affiliated Entities have not received payment on any of the Purchased Receivables and shall not hereafter accept any such payment, but shall instruct payment to be made to PCF and shall promptly notify PCF of the payment attempt.

No Current or Historical Tax Liens.  Neither Supplier nor Guarantor has any tax lien, whether or not current.

Not Insolvent and No Current or Historical Bankruptcy.  Supplier is not insolvent and neither Supplier nor Guarantor have: (a)  previously filed for bankruptcy, or (b)  reason to believe either of them may file for bankruptcy within six (6) months of the date of this Guarantee.

Other Factoring Arrangements or Liens.  The Purchased Receivables are not subject to any third party liens, including but not limited to liens by other factoring companies or tax liens.  Over the Term of the Agreement, any past, present or future liens or UCC filings on any Supplier assets will be promptly reported to PCF in writing.

Marketplace Terms of Service Compliance.  No Marketplace has alleged any material defect in Supplier's performance of its duties to the Marketplace, which may impair earnings reported to PCF pursuant to the Agreement.  For avoidance of doubt, this is an ongoing covenant lasting through the Term of the Agreement.

Payments Will Be Sent Directly to PCF.  Guarantor will:

   a.  require each Marketplace to pay directly to PCF's bank account amounts Marketplace owes Supplier on any Purchased Receivables,

   b.  prevent and prohibit Supplier from altering payment information (such as but not limited to bank information, physical address, name, etc.) that would divert payments away from PCF,

   c.  prevent the login and password information delivered to PCF from being modified, or impair, frustrate or delay PCF's access to Marketplace reporting;

   d.  grant PCF reasonable and effective access to each account at a Marketplace with a Purchased Receivable, and

   e.  will require Supplier to immediately pay, within three business days, PCF for any funds paid to it by a marketplace when  such funds should have been sent directly to PCF.

Disputes or Offsets:  For each invoice or Receivable offered for sale to PCF pursuant to the Agreement, Guarantor represents, warrants and covenants there has been no pre-payment, payment dispute, clawback, unreported offset or contra accounting item, or an actual or purported terms of service violation, from any Marketplace.  This includes, but is not limited to: a) co-op charges that will be greater than 10% of gross sales, b) media, advertising, or promotional spending that will cause a reduction in payment from any Marketplace, or c) any payment offset that is not clearly reported in the Marketplace reporting interface provided to PCF. Furthermore, Guarantor agrees to immediately report to PCF the existence of any of the foregoing if they arise at any point during the Term of the Agreement.

No Prior Marketplace-Related Disputes:  Guarantor represents that Supplier or its Affiliated Entities has never had a payment dispute, clawback, or an actual or purported Terms of Service violation from any Google company, any Yahoo company, or any business owned by Amazon.

Use of Proceeds:  All proceeds from PCF will be used solely for business and commercial purposes; proceeds will not be distributed nor paid out in the form of a dividend without the express written consent of PCF.

**I HAVE READ, UNDERSTAND AND AGREE TO THE ABOVE COVENANTS, REPRESENTATIONS AND WARRANTIES, AND UNDERSTAND EACH IS A MATERIAL INDUCEMENT UPON WHICH PCF RELIES AND WITHOUT WHICH PCF WOULD NOT AGREE TO ENTER INTO THE SUPPLIER EARLY PAYMENT AGREEMENT .**

Initials: _____

## **Miscellaneous**

1. Indemnity.  Guarantor will indemnify, defend and hold PCF and its directors, officers, employees and agents (the "Indemnified Parties), harmless from and against any damage, harm or expense, including consequential damages and reasonable attorneys' fees, incurred by PCF as a result of Guarantor's breach of this Guarantee.  Guarantor will specifically indemnify, defend and hold the Indemnified Parties harmless from and against any refusal by a Marketplace to fully pay PCF amounts due for accounts covered by the Agreement as a result of breach of any of the covenants, representations and warranties made by Guarantor herein.
2. JURY WAIVER.  TO THE FULLEST EXTENT PERMITTED BY LAW, GUARANTOR WAIVES ALL RIGHTS TO A JURY TRIAL ON ANY MATTER ARISING FROM OR UNDER THIS GUARANTEE.
3. Jurisdiction and Venue.  This Guarantee shall be solely interpreted under the laws of the State of Texas, as applied to agreements performed wholly within the State of Texas.  Interpretation of this Guarantee or any dispute arising under it may be filed in any state or federal court in the State of Texas, and neither party shall oppose the filing of an action in the State of Texas on the grounds that it is an inconvenient venue.
4. Assignment.  Guarantor may not assign or transfer this Guarantee and any attempted transfer or assignment by Guarantor shall be void.
5. Electronic Signature. This Guarantee may be signed electronically.  Guarantor and PCF accept the use of electronic signatures and storage.
6. Entire Agreement.  This Guarantee, along with the Agreement, sets forth the entire understanding of the parties with respect to the subject matter hereof.  Neither party has been induced to enter into this Guarantee by virtue of, and is not relying upon, any representations or warranties not set forth in this Guarantee, any terms or other communication preceding the execution of this Guarantee, or any prior course of dealing between the parties, including, without limitation, any statements concerning the financial condition of the parties.

Reviewed and agreed by:

**FOR PCF:**

SIGN YOUR NAME BELOW:

PRINT YOUR NAME BELOW:

Keith Smith, CEO

**FOR GUARANTOR:**

SIGN YOUR NAME BELOW:

DocuSigned by:

_Arturo Garcia_

B006A7D314774DE...

PRINT YOUR NAME BELOW:

Arturo Garcia

DocuSign Envelope ID: 44782A97-4AAC-4E6E-B1B4-ZD88AEEC6793

## IDENTITY & ADDRESS VERIFICATION

Due to US Government banking regulations, Payability is required by law to verify both your identity and your address.  Please upload or fax identity and address verification documents per the instructions below.

**Valid documentation for Identity Verification**

● Your current, valid government-issued photo ID.
● This ID must include your picture, signature, name, date of birth, and address, with the exception of passports, which do not need your address.
● The image must be a color scan that shows your photo and required data clearly. The four edges of the ID card must be visible in the scanned image.
● Acceptable documents include passport, national ID card (NIC/CNIC), driver's license, tax ID, voter ID, postal ID, or any other valid government-issued photo ID that meets the criteria above. Even when issued by a government agency, we cannot accept documents like student IDs, employee IDs, or library cards.



Click above to attach Identity Verification

**Valid documentation for Address Verification**

● Your name and address must be visible.
● The utility company or bank address information must be visible.
● Your account may be a joint account, but your name must be on the account. Your name must match your Payability account information and your government ID.
● The dates on your scanned statement must be within six months of the date you upload them.
● Acceptable documents include bank statements, credit card statements, utility bills, or any other monthly bill that meets the criteria above.

Click above to attach Address Verification



# LEASE

## BASIC RENTAL AGREEMENT OR RESIDENTIAL LEASE

This Rental Agreement or Residential Lease shall evidence the complete terms and conditions under which the parties whose signatures appear below have agreed. Landlord/Lessor/Agent ███████████, shall be referred to as "OWNER" and Tenant(s)/Lessee, DADE BROWARD FIRE SAFETY, shall be referred to as "RESIDENT." As consideration for this agreement, OWNER agrees to rent/lease to RESIDENT and RESIDENT agrees to rent/lease from OWNER, for use solely as a private residence, the premises located at _____ in the city of HOLLYWOOD .

**1. TERMS:** RESIDENT agrees to pay in advance ███████ onth on the 15 day of each month. This agreement shall commence on 3·15 , 2017 and continue; (check one)
A. X until 3·15 , 2018 as a leasehold. Thereafter it shall become a month-to-month tenancy. If RESIDENT should move from the premises prior to the expiration of this time period, he shall be liable for all rent due until such time that the Residence is occupied by an OWNER approved paying RESIDENT and/or expiration of said time period, whichever is shorter.
B. __ until _____ , _____ on a month-to-month tenancy until either party shall terminate this agreement by giving a written notice of intention to terminate at least 30 days prior to the date of termination.

**2. PAYMENTS:** Rent and/or other charges are to be paid at such place or method designated by the owner as follows CASH, CHECK, DEPOSIT INTO BANK . All payments are to be made by check or money order and cash shall be acceptable. OWNER acknowledges receipt of the First Month's rent of ███████ nd a Security Deposit of $ 0.00 , and additional charges/fees for _____ ment of $_____. All payments are to be made payable

**3. SECURITY DEPOSITS:** The total of the above deposits shall secure compliance with the terms and conditions of this agreement and shall be refunded to RESIDENT within 15 days after the premises have been completely vacated less any amount necessary to pay OWNER: a) any unpaid rent, b) cleaning costs, c) key replacement costs, d) cost for repair of damages to premises and/or common areas above ordinary wear and tear, and e) any other amount legally allowable under the terms of this agreement. A written accounting of said charges shall be presented to RESIDENT within _____ days of move-out. If deposits do not cover such costs and damages, the RESIDENT shall immediately pay said additional costs for damages to OWNER.

**4. LATE CHARGE:** A late fee of $ 87.50 (not to exceed 5 % of the monthly rent), shall be added and due for any payment of rent made after the 18 of the month. Any dishonored check shall be treated as unpaid rent, and subject to an additional fee of $ 40.00 .

**5. UTILITIES:** RESIDENT agrees to pay all utilities and/or services based upon occupancy of the premises except _____ NONE _____ .

**6. OCCUPANTS:** Guest(s) staying over 15 days without the written consent of OWNER shall be considered a breach of this agreement. ONLY the following individuals and/or animals, AND NO OTHERS shall occupy the subject residence for more than 15 days unless the expressed written consent of OWNER obtained in advance _____ NONE _____

**7. PETS:** No animal, fowl, fish, reptile, and/or pet of any kind shall be kept on or about the premises, for any amount of time, without obtaining the prior written consent and meeting the requirements of the OWNER. Such consent if granted, shall be revocable at OWNER'S option upon giving a 30 day written notice. In the event laws are passed or permission is granted to have a pet and/or animal of any kind, an additional deposit in the amount of $ 0.00 shall be required along with additional monthly rent of $ 0.00 along with the signing of OWNER'S Pet Agreement. RESIDENT also agrees to carry insurance deemed appropriate by OWNER to cover possible liability and damages that may be caused by such animals.

# EXHIBIT "C"

| earning_date | purchase | supplier_payment | fees | available_balance | reserve_balance | due_from_marketplace |
|---|---|---|---|---|---|---|
| 4/17/2017 | | | | 0.00E+00 | 0.00E+00 | 16785.2 |
| 4/18/2017 | 19502.98 | | | 0.00E+00 | 0.00E+00 | 19502.98 |
| 4/19/2017 | 1832.19 | 15602.38 | | -515 | 3771.85 | 20691.42 |
| 4/20/2017 | 2706.9 | | | 505.93 | 4027.08 | 22842.29 |
| 4/21/2017 | 793.18 | 2671.45 | | -77.21 | 4549.16 | 23538.96 |
| 4/22/2017 | 923.54 | | | 449.94 | 4680.94 | 24328.25 |
| 4/23/2017 | | | | 1086.68 | 4840.13 | 25268.33 |
| 4/24/2017 | 1067.69 | 1188.77 | | 718.16 | 5045.19 | 25579.13 |
| 4/25/2017 | 353.18 | 718.16 | | 234.05 | 5103.7 | 26019.81 |
| 4/26/2017 | 501.3 | 282.54 | 10.03 | 257.83 | 5182.79 | 26796.13 |
| 4/27/2017 | 882.18 | 945.93 | 17.64 | 0.00E+00 | 5359.23 | 26796.13 |
| 4/30/2017 | | | 13.98 | -13.98 | 5359.23 | 26796.13 |
| | 28563.14 | 21409.23 | 41.65 | | | |
| | | 21450.88 | | | | |

# EXHIBIT "D"

 **Law Office of Mark S. Roher, P.A.**

101 N.E. Third Ave., Suite 1518   |   Fort Lauderdale, Florida 33301   |   P: 954-353-2200   |   F: 877-654-0090   |   www.markroherlaw.com
Email: mroher@markroherlaw.com

**July 12, 2017**

**Via Email [dadebrowardfire@gmail.com] and Federal Express**
**Arturo G. Garcia, individually and as Registered Agent for**
**Dade Broward Fire Safety, Inc.**
**20340 N.E. 15th Court, Suite 422**
**Miami, FL 33179**

        **RE:**    **Civil Theft Demand Letter**
                  **Payability Commercial Factors, LLC**

Mr. Garcia:

I represent Payability Commercial Factors, LLC ("Payability") to sue Dade Broward Fire Safety, Inc. ("DBFS") and you individually to collect the debt of $21,409.23 owed to Payability (the "Funds").

Both You, personally and DBFS have knowingly obtained and used the Funds provided by Payability with the intent to either temporarily or permanently (a) deprive Payability of the Funds and (b) appropriate the Funds for Yours and DBFS' own use or to the use of any person not entitled to the use of the property, in violation of Fla. Stat. § 812.014. This constitutes civil theft in the State of Florida.

This notice is provided to you as a condition precedent for filing a lawsuit. *See* Fla. Stat. § 772.11. A copy of said statute is attached hereto for your information. Be aware that the statute authorizes treble damages bringing the value of the damages and this demand to **$64,227.69**.

The statute allows you 30 days from the receipt of this letter within which to comply with this demand. If you comply, you may be given a written release from further civil liability for the wrongful retention of the Funds. The statute also provides for my client's reasonable attorneys' fees and court costs in the event a suit is filed. To date, my client's current attorney's fees and costs incurred in this matter are currently **$2,000.00**. In the event you choose to make the payment, such payment should be made by certified check to the "Mark S. Roher, P.A. Trust Account" and delivered to me at the addresses listed above.

**GOVERN YOURSELF ACCORDINGLY**

Mark S. Roher, Esq.


Encl. - copy of Fla. Stat. § 772.11
cc:    Client (via email)

Select Year: 2015 [Go]

## The 2015 Florida Statutes

Title XLV                    Chapter 772                    View Entire Chapter
TORTS              CIVIL REMEDIES FOR CRIMINAL PRACTICES

**772.11   Civil remedy for theft or exploitation.**—

(1)   Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts. Before filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section. If the person to whom a written demand is made complies with such demand within 30 days after receipt of the demand, that person shall be given a written release from further civil liability for the specific act of theft or exploitation by the person making the written demand. Any person who has a cause of action under this section may recover the damages allowed under this section from the parents or legal guardian of any unemancipated minor who lives with his or her parents or legal guardian and who is liable for damages under this section. Punitive damages may not be awarded under this section. The defendant is entitled to recover reasonable attorney's fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim that was without substantial fact or legal support. In awarding attorney's fees and costs under this section, the court may not consider the ability of the opposing party to pay such fees and costs. This section does not limit any right to recover attorney's fees or costs provided under any other law.

(2)   For purposes of a cause of action arising under this section, the term "property" does not include the rights of a patient or a resident or a claim for a violation of such rights.

(3)   This section does not impose civil liability regarding the provision of health care, residential care, long-term care, or custodial care at a licensed facility or care provided by appropriately licensed personnel in any setting in which such personnel are authorized to practice.

(4)   The death of an elderly or disabled person does not cause the court to lose jurisdiction of any claim for relief for theft or exploitation when the victim of the theft or exploitation is an elderly or disabled person.

(5)   In a civil action under this section in which an elderly or disabled person is a party, the elderly or disabled person may move the court to advance the trial on the docket. The presiding judge, after consideration of the age and health of the party, may advance the trial on the docket. The motion may be filed and served with the civil complaint or at any time thereafter.

**History.**—s. 3, ch. 86-277; s. 47, ch. 88-381; s. 5, ch. 89-303; s. 1181, ch. 97-102; s. 2, ch. 2002-195; s. 8, ch. 2014-200.

Copyright © 1995-2016 The Florida Legislature • Privacy Statement • Contact Us