**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

ARTURO GARCIA,                                      Case No. 17-23250-RBR

                                                   Chapter 7

     Debtor.
_____/

PAYABILITY COMMERCIAL                              Adv. No.  18-01153-RBR
FACTORS, LLC,
a Texas limited liability company,

     Plaintiff

vs.

ARTURO GARCIA,

     Defendant
_____/

**PLAINTIFF'S MOTION FOR SUMMARY**
**JUDGMENT ON COUNT I OF ITS FIRST AMENDED COMPLAINT**

Plaintiff, Payability Commercial Factors, LLC, a Texas limited liability company

("Plaintiff"), by and through undersigned counsel, and pursuant to Rule 56 of the Federal Rules of

Civil Procedure as made applicable to this proceeding by Rule 7056 of the Federal Rules of

Bankruptcy Procedure, files this Motion for Summary Judgment on Count I of its Amended

Complaint [ECF No. 21] Objecting to Discharge Pursuant to 11 U.S.C. § 727(a)(3) against

Defendant, Arturo Garcia (the "Defendant"), as follows:

**I.     Relevant Background and Undisputed Facts**

1.     On January 12, 2018, Plaintiff filed and served its Re-Notice of Taking Rule 2004

Duces Tecum of the Debtor requesting Debtor produce documents recorded information, including

books, documents, records, and papers, from which the debtor's financial condition or business

1

transactions might be ascertained (the "Document Request") [Main Case ECF No. 21], a copy of which is attached hereto as Exhibit "A".

2.      On February 20, 2018, Debtor filed and served his Response to the Document Request (the "Response") [Main Case ECF No. 29], a copy of which is attached hereto as Exhibit "B".

3.      As set forth in paragraphs 18 and 31 of the Response, Debtor failed to produce *any* of his tax returns for the past 5 years because he allegedly has failed to file *any* tax returns in the past 5 years.

4.      On July 14, 2018, Plaintiff filed its First Amended Complaint (the "Complaint") [ECF No. 12].

5.      On August 27, 2018, Debtor filed a Motion to Dismiss First Amended Complaint (the Motion") [ECF No. 19].

6.      On October 17, 2018, the Court entered its Order Granting in Part and Denying in Part Defendant's Motion to Dismiss [ECF No. 27], which denied the motion as to Count I of the Amended Complaint.

7.      On October 29, 2018, Defendant filed his Answer to the First Amended Complaint (the "Answer") [ECF No. 29] and did not assert any affirmative defenses.

8.      In his paragraph 1 of his Answer, Defendant admits the allegations contained in paragraph 27 of the Complaint, which are:

> Upon information and belief, Debtor failed to produce any tax returns to the Chapter 7 trustee in this case and has withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

## II.    Motion for Summary Judgment and Incorporated Memorandum of Law

### A.    Standard for Motion for Summary Judgment

9.    Rule 56(c) states that the "judgment sought should be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Cattrett*, 477 U.S. 317 (1986). The moving party is entitled to summary judgment if there is a "complete failure of proof concerning an essential element" as that failure "renders all other facts immaterial . . ." *Welt v. Amerisourcebergen Drug Corp*., No. 08-80287-CIV, 2009 WL 2730167, *2 (S.D. Fla. Aug. 25, 2009).  The determination as to which facts are material is governed by the substantive law applicable to the causes of action.  *CTA Lind & Co Scandinavia v. Lind*, No. 8:08-cv-1380-T-30TGW, 2009 WL 961156, *1 (M.D. Fla. April 7, 2009). The purpose of Rule 56 is to eliminate unnecessary delay and expense to the parties by a superfluous trial. *McLean v. GMAC Mortgage Corp*., 595 F. Supp. 2d 1360, 1364 (S.D. Fla. 2009).

### B.    Summary Judgment on Count I of the Complaint for Denial of Discharge Under Bankruptcy Code Section 727(a)(3) Should Be Entered in Favor of Plaintiff Due to Defendant's Failure to Produce Any Tax Returns

10.    It is undisputed that Defendant has failed to produce any tax returns to Plaintiff in this case.

11.    In the case of *In the Matter of Wilson*, 33 B.R. 689, 691 (Bankr. M.D. Ga. 1983), the bankruptcy court denied a debtor's discharge where the debtor failed to file tax any tax returns since 1978 based on the following rationale:

> Section 727(a)(3) is intended "to enable creditors, with the assistance of proper books and records, to ascertain the true status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." 4 Collier on Bankruptcy ¶ 727.03[1] (15th ed. 1983). Section 727(a)(3) requires that a debtor produce some accurate written information that the creditors and trustee can rely on in tracing the debtor's financial history during the period preceding his bankruptcy. *Tucker v.*

3

*Devine (In re Devine)*, 11 B.R. 487, 4 Collier Bankr. Cas.2d 732 (Bkrtcy.D.Mass.1981). Records are adequate when they are kept "so as to reflect, with a fair degree of accuracy, the debtor's financial condition and in a manner appropriate to his business." 4 Collier on Bankruptcy ¶ 727.03[3] (15th ed. 1983) (footnotes omitted).

*    *    *

In this adversary proceeding, the Court is convinced that Defendant did not keep adequate books and records. Defendant has not maintained accounts and ledgers in the Thomaston business since 1979. **Nor has Defendant filed a tax return since 1978. The only record of receipts and disbursements made by Defendant since 1980 is in a checkbook.** Defendant's checkbook records reflect only those receipts that were actually deposited in the checking account and in no way enable a creditor or the trustee to verify the total receipts of the Thomaston practice. Any payment (e.g., a preferential payment) not made through the checking account would go undetected by creditors, if not disclosed by Debtor. Also, this checking account was used to pay both personal and business expenses. Clearly, it cannot be said that Defendant maintained sufficient records in his Thomaston practice.

*Id*. at 692-93 (emphasis added).

12.     There can be no reasonable justification for the Defendant in this case to not file any tax returns for 5 years and then voluntarily file a bankruptcy case with the expectation that he be entitled to receive a discharge.

13.     Moreover, Judge Cristol's opinion in the case of *In re Weisenfeld*, Case No. 08-22389-BKC-AJC and Case No. 09-2526-AJC-A (Bankr. S.D. Fla. March 18, 2011) unequivocally supports the entry of summary judgment in this case:

> **In a personal bankruptcy case, "the quintessential documents that must be preserved and kept are debtor's income tax returns.**" *Henderson*, 423 B.R. at 617 (internal citation omitted); see also, 11 U.S.C. § 521(e)(2)(A) (debtor is statutorily obligated to provide the case trustee and creditors who request the same with a copy of his or her Federal tax return or transcript for the most recent tax year ending immediately before commencement of the case) and 11 U.S.C. § 521(f) (debtor is statutorily obligated to file with the court late-filed Federal tax returns for years preceding the bankruptcy filing and future Federal tax returns for each tax year while the bankruptcy case is pending).

"A creditor objecting to a discharge under § 727(a)(3) has the initial burden of proving (1) that the debtor failed to maintain and preserve adequate records, and

4

(2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Buzzelli*, 246 B.R. at 95 (citing Meridian Bank, 958 F.2d at 1232). **Once a creditor shows that a debtor's records are insufficient, the burden of going forward shifts to the debtor to justify such insufficiencies.** *Buzzelli*, 246 B.R. at 96; In re Greene, 340 B.R. 93, 98-99 (Bankr. M.D. Fla. 2006). "Factors which may be considered by the court in making this factual determination include debtor's education, the sophistication of the debtor, debtor's business experience, the size and complexity of debtor's business, debtor's personal financial structure, and any special circumstances that may exist." *Id.*

The Trustee has met his burden under § 727(a)(3), but the Debtor has not. **A debtor's tax returns are quintessential documents that enable a bankruptcy trustee and other creditors to be allowed to understand the financial condition of the debtor**. The Debtor has not prepared or filed his personal Federal income tax returns for 2006, 2007 or 2008; and WAPA, the primary source of Debtor's income for 2006 and 2007, also did not file its Federal income tax returns for 2006, 2007 and 2008 — and it was the Debtor who was responsible for maintaining WAPA's book and records. The Debtor was a practicing attorney who possessed the necessary level of knowledge, education and sophistication to understand his legal obligation to file tax returns and the ramifications of his failure to do so. The Debtor did not begin his incarceration until April 2, 2009, approximately eight (8) months after the Petition Date. Within that period of time, the Debtor had the opportunity to prepare and file said tax returns, but did not do so. Moreover, the Debtor has provided no justification for failing to file 2006, 2007 and 2008 Federal income tax returns for himself and for WAPA.

The Debtor's failure to, among other things, file tax returns for himself and WAPA, and maintain accurate and complete books and records for WAPA, prevent the Trustee from ascertaining the true financial condition of the Debtor and WAPA and from properly administering the bankruptcy estates of the Debtor and WAPA. Accordingly, the Debtor's discharge is denied pursuant to 11 U.S.C. § 727(a)(3).

(emphasis added).  A copy of the *Weisenfeld* decision is attached hereto as <u>Exhibit "C"</u>.

14.    Defendant in this case has failed to file any tax returns for the past 5 years and has therefore failed to provide these "quintessential documents that enable a bankruptcy trustee and other creditors to be allowed to understand the financial condition of the debtor" justifying the entry of summary judgment denying his discharge pursuant to Bankruptcy Code Section 727(a)(3). The failure to file any tax returns for 5 years prior to the filing of a voluntary petition is not justified under any circumstances because pursuant to (a) 11 U.S.C. § 521(e)(2)(A) a debtor is statutorily

obligated to provide the case trustee and creditors who request the same with a copy of his or her Federal tax return or transcript for the most recent tax year ending immediately before commencement of the case) and (b) pursuant to 11 U.S.C. § 521(f), a debtor is statutorily obligated to file with the court late-filed Federal tax returns for years preceding the bankruptcy filing and future Federal tax returns for each tax year while the bankruptcy case is pending.

**WHEREFORE**, Plaintiff respectfully requests the entry of a final summary judgment on Count I of the Complaint denying his discharge pursuant to Bankruptcy Code Section 727(a)(3) and granting such other relief as is just and proper under the circumstances.

Dated:  January 22, 2019

**LAW OFFICE OF MARK S. ROHER, P.A.**
*Counsel for Plaintiff*
150 S. Pine Island Road, Suite 300
Plantation, FL 33324
Email:  mroher@markroherlaw.com
Telephone: (954) 353-2200
By:    */s/ Mark S. Roher*
    Mark S. Roher
    Florida Bar No. 178098

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by email on the parties listed below on January 22, 2019.

*/s/ Mark S. Roher*
Mark S. Roher

Samir Masri on behalf of Debtor Arturo G Garcia
masrilaw@aol.com
Facsimile:  (305) 204-9303

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

ARTURO GARCIA,

    Debtor.

_____/

PAYABILITY COMMERCIAL
FACTORS, LLC,
a Texas limited liability company,

    Plaintiff

vs.

ARTURO GARCIA,

    Defendant

_____/

Case No. 17-23250-RBR

Chapter 7

Adv. No.  18-01153-RBR

**<u>FIRST AMENDED COMPLAINT</u>**

Plaintiff, PAYABILITY COMMERCIAL FACTORS, LLC, a Texas limited liability

company ("<u>Plaintiff</u>"), by and through undersigned counsel, sues Defendant, Arturo Garcia (the

"<u>Debtor</u>") and alleges:

**PARTIES, JURISDICTION AND VENUE**

1.    The Court has jurisdiction in this proceeding pursuant to 28 U.S.C. §1334(b),

§157(b)(2)(I) and 11 U.S.C. §523(c), and Admin. Order 2012-25 of the United States District

Court for the Southern District of Florida, referring bankruptcy matters to this court.

2.    This is a core proceeding.

2.    Plaintiff is a creditor in this case.

3.    Defendant is the debtor in this Chapter 7 case and therefore venue is proper.

4.      Debtor filed his petition on October 31, 2017 (the "Petition Date").

5.      Payability is listed in Bankruptcy Schedule F as a creditor of Debtor holding an undisputed unsecured claim [Main Case ECF No. 1].

6.      On December 11, 2017, Payability served its original Notice of Taking Rule 2004 Examination Duces Tecum on the Debtor, requesting documents be produced by December 28, 2017 [Main Case ECF No. 12].

7.      Debtor's counsel requested more time to produce the documents and agreed that the Debtor would produce documents by January 22, 2017.

8.      As such, on January 12, 2018, Payability filed and served upon the Debtor the 2004 Exam Notice, setting the examination for February 7, 2018 at 10:00 p.m. and demanding that documents be produced by January 22, 2018, as agreed.

9.      As of February 2, 2018, Debtor had failed to produce any documents, forcing Payability to file a motion to compel in the main case [Main Case ECF No. 23].

## COUNT I
### [Objection to Discharge Pursuant to 11 U.S.C. § 727(a)(3)]

10.     All allegations in paragraphs 1 through 9 are incorporated by reference in this count.

11.     On January 12, 2018, Plaintiff filed and served its Re-Notice of Taking Rule 2004 Duces Tecum of the Debtor requesting Debtor produce documents recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained (the "Document Request") [Main Case ECF No. 21], a copy of which is attached hereto as Exhibit "A".

12.     On February 20, 2018, Debtor filed and served his Response to the Document Request (the "Response") [Main Case ECF No. 29], a copy of which is attached hereto as Exhibit "B".

13.     As set forth in paragraph 2 of the Response, Debtor failed to produce *any* of his credit card statements in response to the Document Request.

14.     Plaintiff has never received any of the credit card statements from the Debtor.

15.     As set forth in paragraphs 18 and 31 of the Response, Debtor failed to produce *any* of his tax returns for the past 5 years because he allegedly has failed to file *any* tax returns in the past 5 years.

16.     Debtor produced only a very limited amount of the requested bank statements for the 4 years prior to the Petition Date.

17.     Debtor has failed to keep or preserve any recorded information, documents, records or papers, from which the Debtor's business transactions might be ascertained.

18.     Debtor's failure to keep or preserve any recorded information, documents, records or papers was not justified under all of the circumstances of the case.

19.     Accordingly, Debtor should be denied his discharge pursuant to 11 U.S.C. § 727(a)(3).

**WHEREFORE**, Plaintiff seeks judgment in its favor and against Debtor, denying Debtor's discharge pursuant to 11 U.S.C. § 727(a)(3), for costs of suit and for such other and further relief as the Court deems just and proper.

## COUNT II
### [Objection to Discharge Pursuant to 11 U.S.C. § 727(a)(5)]

20.    All allegations in paragraphs 1 through 9 and 11 through 19 are incorporated by reference in this count.

21.    The debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

22.    Accordingly, Debtor should be denied his discharge pursuant to 11 U.S.C. § 727(a)(5).

**WHEREFORE**, Plaintiff seeks judgment in its favor and against Debtor, denying Debtor's discharge pursuant to 11 U.S.C. § 727(a)(5), for costs of suit and for such other and further relief as the Court deems just and proper.

## COUNT III
### [Objection to Discharge Pursuant to 11 U.S.C. § 727(a)(4)(D)]

23.    All allegations in paragraphs 1 through 9 and 11 through 19 are incorporated by reference in this count.

24.    Item 29 of the Document Request instructed Debtor to produce all documents that he produced to the Chapter 7 trustee in the main case.

25.    Upon information and belief, the Chapter 7 trustee in this case would have, as in all cases, requested the Debtor produce his tax returns for the two calendar years prior to the Petition Date.

26.    Bankruptcy Courts have recognized that "tax returns are essential to orderly administration of debtors' estates because in absence of a return, trustees are asked to blindly

4

accept the debtor's statements as contained in their schedules." *In re Cobb*, 216 B.R. 686, 680

(Bankr. M.D. Fla. 1998) (citations omitted)

27.    Upon information and belief, Debtor failed to produce any tax returns to the

Chapter 7 trustee in this case and has withheld from an officer of the estate entitled to possession

under this title, any recorded information, including books, documents, records, and papers,

relating to the debtor's property or financial affairs.

28.    Accordingly, Debtor should be denied his discharge pursuant to 11 U.S.C. §

727(a)(4)(D).

**WHEREFORE**, Plaintiff seeks judgment in its favor and against Debtor, denying

Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(D), for costs of suit and for such other and

further relief as the Court deems just and proper.

Dated:  July 14, 2018                  Respectfully Submitted,

**LAW OFFICE OF MARK S. ROHER, P.A.**
*Counsel for Plaintiff*
5989 Stirling Road
Fort Lauderdale, Florida 33314
Email:  mroher@markroherlaw.com
Telephone:  (954) 353-2200
Facsimile:  (877) 654-0090

By:   */s/ Mark S. Roher*
       Mark S. Roher
       Florida Bar No. 178098

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of July, 2018, a true and correct copy of the

foregoing was served by CM/ECF on all parties listed below.

/s/ *Mark S. Roher*
Mark S. Roher

5

Samir Masri on behalf of Debtor Arturo G Garcia
masrilaw@aol.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Kenneth A Welt
fl10@ecfcbis.com;pacerfilings@gmail.com;kaw@trustesolutions.net;court@trusteeservices.biz

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

Case No. 17-23250-RBR

ARTURO GARCIA,

Chapter 7

      Debtor.

_____/

**RE-NOTICE BY CREDITOR, PAYABILITY COMMERCIAL FACTORS, LLC**
**OF TAKING RULE 2004 EXAMINATION DUCES TECUM OF DEBTOR**

      PAYABILITY COMMERCIAL FACTORS, LLC ("Creditor"), by undersigned counsel, will examine the Debtor, ARTURO GARCIA, under oath on **Wednesday, February 7, 2018 at 10:00 a.m.** at the Law Office of Mark S. Roher, P.A., 101 N.E. Third Ave., Suite 301, Fort Lauderdale, FL 33301, following the production of the documents requested in the attached document requests.

      The examination is pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1, and will be taken before an officer authorized to record the testimony. The scope of the examination shall be as described in Bankruptcy Rule 2004. Pursuant to Local Rule 2004-1 no order shall be necessary.

      **The Debtor is directed to produce and deliver to Creditor, c/o Mark S. Roher [mroher@markroherlaw.com], Law Office of Mark S. Roher, P.A., 101 N.E. Third Ave., Suite 1518, Fort Lauderdale, FL 33301, any documents described on the attached Schedule A on or before 5:00 p.m. on January 22, 2018 (as agreed).**

# EXHIBIT "A"

Dated:  January 12, 2018          Respectfully Submitted,

**LAW OFFICE OF MARK S. ROHER, P.A.**
*Counsel for Payability Commercial Factors, LLC*
101 N.E. Third Ave., Suite 1518
Fort Lauderdale, Florida 33301
Email:  mroher@markroherlaw.com
Telephone:  (954) 353-2200
Facsimile:  (877) 654-0090

By:   */s/ Mark S. Roher*
        Mark S. Roher
        Florida Bar No. 178098

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 12th day of January, 2018, a true and correct copy of the

foregoing was served by CM/ECF on all parties listed below.

*/s/ Mark S. Roher*
Mark S. Roher


Timothy S Kingcade, Esq on behalf of Debtor Arturo G Garcia
scanner@miamibankruptcy.com, kingcadeserve@bellsouth.net;r46540@notify.bestcase.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Mark S. Roher, Esq. on behalf of Creditor Payability Commercial Factors, LLC
mroher@markroherlaw.com,
ecf@markroherlaw.com,markroher@me.com,ecf2@markroherlaw.com

Kenneth A Welt
fl10@ecfcbis.com;pacerfilings@gmail.com;kaw@trustesolutions.net;court@trusteeservices.biz

2

## Schedule "A"

## Definitions

As used in this request, the following words shall be defined as follows:

1)      "Document" includes, but is not limited to, originals where available, or otherwise a carbon copy, xerox copy or other copy, including each non-identical copy (whether different from the original because of marginal notes, or other material inserted or attached thereto, or otherwise) of each item of correspondence, letters, memoranda, messages, telephone bills, notes, offers, orders, confirmations, contracts, agreements, reports, punch sheets, punch lists, agendas, cables, telegrams, diaries, appointment books, invoices, ledgers, returns, accounts, checks, check stubs, drafts, statements, indexes, data sheets, data processing cards, logs, worksheets, service orders, expense vouchers, maintenance records, inspection reports, licenses, permits, settlement paperwork, printing, pictures, advertisements, slides, film, microfilm, micro fiche and other written matter of every kind and character; transcripts, recording tapes, recording disks or other records of oral communications; and graphs, books, charts, tables, prospectuses, tabulations, worksheets, compilations, summaries, minutes, lists, pamphlets, brochures, drawings, renderings, diagrams, sketches, etchings, tracings, plans, blueprints, posters, periodicals, publications, bulletins, computer printouts, studies, electronic mail, information contained in electronic or computer storage media and other papers in the possession, custody or control of ARTURO GARCIA, or his agents, employees, joint venturers, attorneys or representatives, including documents which were prepared by ARTURO GARCIA, or his agents, employees, joint venturers, attorneys or representatives, which did not leave the custody of the person preparing them.

2)      "You", "Your" and "Debtor" means ARTURO GARCIA, or his agents, employees, attorneys or representatives, and any and all other persons acting for, purporting to act for or

3

subject to the control of ARTURO GARCIA, including any business or business entity in which You have or had an interest in the four (4) year period leading up to and including the Petition Date.

      3)     "And" or "Or" shall include the conjunctive as well as the disjunctive.

      4)     "Communications" include correspondence, discussions, telephone conversations and all other forms of written or oral communication.

      5)     "Petition Date" means October 31, 2017.

## Instructions

      1.     List all documents withheld under any claim of privilege, or other protection from discovery in response to these requests.

      2.     Identify each withheld document by setting forth:

      (a)     the type of document (e.g., letter, memorandum, telegram, chart, photograph, reproduction, etc.);
      (b)     the date of the document;
      (c)     the names of the author and each addressee;
      (d)     the name, address and title of the custodian of each document not produced;
      (e)     the identity of the person(s) asserting the privilege/protection claimed;
      (f)     the identity of the person(s) having knowledge of the information sought;
      (g)     the subject matter of the document; and
      (h)     the basis upon which the privilege/protection is claimed.

      3.     These document requests are continuing and further supplemental responses and production shall be made and served upon counsel for Creditor if and when additional documents or communications relevant to these document requests come into your possession.

      4.     Unless otherwise stated, these document requests call for the production of documents created, dated, sent or received on or after October 31, 2013, through and including the present.

**<u>Schedule of Documents to be Produced</u>**

1.      Copies of each of Your current driver's license.

2.      Copies of the account statements for all accounts listed in Your Bankruptcy Schedule F.

3.      An itemized schedule of all real property which You have owned, directly or indirectly, or had an ownership interest, or beneficial interest, in the six (6) year period up to and including the Petition Date, detailing the property address, the legal description, and Your interest therein.

4.      For all properties described in Paragraph 3, copies of all documents reflecting Your ownership interest in said real property, including but not limited to deeds, sales contracts and mortgages and closing statements.

5.      For all properties described in Paragraph 3 that were sold or transferred, either by You or to You, or by or to an entity in which you have or had any type of legal or beneficial interest or by or to any individual, before the Petition Date, an itemized schedule detailing when the real property was transferred or sold, contact information for the transferee, and the amount received for the transfer or sale and copies of all documents evidencing the transfer of the real property including deeds and sales contracts.

6.      For all properties described in Paragraph 3, copies of all account statements reflecting the current loan balance of any and all mortgages or other liens secured by these properties, including by not limited to financial statements prepared by You or on Your behalf that were submitted and any other financial statements produced to mortgage holders.

7.      For all properties described in Paragraph 3, copies of any or all insurance policies and/or binders covering the last four years up to and including the Petition Date.

8.      All documents relating to or evidencing any and all contributions to any retirement plans during the four (4) years prior to the Petition Date thought the present.

9.      Copies of any Documents that relate to any checking, savings, or other financial accounts; certificates of deposits; shares in credit unions, brokerage houses, and other similar institutions over which You have had signature authority (including, but not limited to, copies of statements, items, memoranda, evidence of wire transfers, debits, credits and cashier's checks, and as to any checks of any kind, copies of the front and back).

10.      Copies of Your passport.

11.      All insurance binders on any insurance policy obtained on Your personal property for the last four (4) years up to and including the Petition Date.

12.      Credit card statements for each and every credit card in which You are listed as a signatory for the last four (4) years up to and including the Petition Date.

13.      All charge account statements for every charge account listed on Schedule F of Your Petition for the last four (4) years up to and including the Petition Date.

14.      All account statements for every line of credit listed on Schedule F of Your Petition for the last four (4) years up to and including the Petition Date.

15.      All financial statements, inventories, and schedules reflecting Your assets, liabilities, income and net worth, whether prepared by You or on Your behalf, for the last four (4) years up to and including the Petition Date.

16.      All documents referring to, regarding, or reflecting the nature of the goods or services purchased or obtained with the credit cards and credit line debts incurred by You, including receipts, bills, checks, invoices, and any other documents identifying the goods or services purchased.

6

17.     Any and all documents in Your possession or obtainable by You that relate to any business in which You have or had an interest for the four (4) year period up to and including the Petition Date.

18.      Tax returns, financial statements, general ledgers, accounts receivable and payable reports for any business in which You have or had an interest for the four (4) year period up to and including the Petition Date.

19.     A schedule of all personal property owned by You or in which You have had an interest of any kind (whether legal or beneficial or a combination thereof) at any time for the (4) years up to and including the Petition Date.

20.     Copies or any rent rolls for any real property owned by You (either individually or with any other individual or entity) during the four (4) years prior to the Petition Date thought the present.

21.     Copies of any leases for any real property owned by You (either individually or with any other individual or entity) during the four (4) years prior to the Petition Date thought the present.

22.     Copies of any communications with any tenant(s) or lessee(s) of any real property owned by You (either individually or with any other individual or entity) during the four (4) years prior to the Petition Date thought the present.

23.     All documents relating to Your transfer of any personal property to any family member of Yours during the four years prior to the Petition Date.

24.     All documents relating to Your transfer of any personal property to an Insider as that term is defined in 11 U.S.C. § 101(31)(A) during the four years prior to the Petition Date.

25.     All documents relating to Your transfer of any real property to an Insider as that term is defined in 11 U.S.C. § 101(31)(A) during the four years prior to the Petition Date.

26.     All documents relating to the businesses listed in item 27 of Your Statement of Financial Affairs.

27.     All documents relating to any source of Your Income for the past four (4) years.

28.     All documents relating to any transfers, other than property transferred within the ordinary course Your financial affairs during the four (4) year period up to and including the Petition Date.

29.     Any and all Documents produced to the Chapter 7 trustee in this matter.

30.     Every personal financial statement that You prepared, delivered, or had delivered, to any person or entity at any time from and after October 31, 2013 to the present.

31.     Your personal income tax returns (U.S. and international) for the last five (5) years, including W-2 forms and 1099, as well as tangible and intangible property tax returns for the last five (5) years.

32.     Your W-2 and/or 1099 forms and any other documents showing Your income for 2017.

33.     Copies of any Documents that relate to any bank accounts not listed in Your Schedule B over which You have had signature authority (including, but not limited to, copies of statements, items, memoranda, evidence of wire transfers, debits, credits and cashier's checks, and as to any checks of any kind, copies of the front and back) from and after October 31, 2013 to the present.

34.     Color photographs and an itemized schedule of all of Your household goods and furnishings.

35.     Color photographs and an itemized schedule of all personal property of Yours.

36.     Color photographs and an itemized schedule of the jewelry listed on line 12 of Schedule B and valued at $50.00 and copies of any documents that support the scheduled valuation.

37.     All insurance binders on any insurance policy obtained on Your personal property for the last four (4) years up to and including the Petition Date.

38.     Any and all documents related to any vehicle(s) that You have used in the past four (4) years including but not limited to the vehicle(s) which you drive regularly or have driven regularly (more than 3 times a week), which establish the year, make and model of the vehicle(s), including but not limited to the title, registration, proof of insurance, loan statements and payoff amount for said vehicle loan, if any, as of the Petition Date and as of the date of Your 2004 Examination.

39.     Documentation reflecting or relating to your ownership in any other vehicle, for the four (4) year period leading up to and including the Petition Date.

40.     Credit card statements for each and every credit card in which You are listed as a signatory for the last four (4) years up to and including the Petition Date.

41.     All charge account statements for every charge account listed on Schedule F of Your Petition for the last four (4) years up to and including the Petition Date.

42.     All account statements for every line of credit listed on Schedule F of Your Petition for the last four (4) years up to and including the Petition Date.

43.     All financial statements, inventories, and schedules reflecting Your assets, liabilities, income and net worth, whether prepared by You or on Your behalf, for the last four (4) years up to and including the Petition Date.

9

44.     All documents referring to, regarding, or reflecting the nature of the goods or services purchased or obtained with the credit card and credit line debt incurred by You, including receipts, bills, checks, invoices, and any other documents identifying the goods or services purchased.

45.     A schedule of all personal property owned by You or in which You have had an interest of any kind (whether legal or beneficial or a combination thereof) at any time for the two year (2) year period up to and including the Petition Date.

46.     All documents showing the source of funds used to pay Your bankruptcy attorney the $2,525.00 as listed in Item 16 of Your Statement of Financial Affairs.

Dated:  January 12, 2018          Respectfully Submitted,

**LAW OFFICE OF MARK S. ROHER, P.A.**
*Counsel for PAYABILITY COMMERCIAL FACTORS, LLC.*
101 N.E. Third Ave., Suite 1518
Fort Lauderdale, Florida 33301
Email:  mroher@markroherlaw.com
Telephone:  (954) 353-2200
Facsimile:  (877) 654-0090

By:_____*/s/ Mark S. Roher*_____
          Mark S. Roher
          Florida Bar No. 178098

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of December 2017, a true and correct copy of the foregoing was served by CM/ECF on all parties receiving notice by this method.

/s/ *Mark S. Roher*_____
Mark S. Roher

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION

In re:

**ARTURO GARCIA,**                                 Case Number 17-23250-RBR
                                                   Chapter 7
     Debtor.

_____/

## DEBTOR'S VERIFIED RESPONSE TO PAYABILITY COMMERCIAL FACTORS, LLC'S REQUEST FOR DOCUMENTS PURSUANT TO RE-NOTICE OF TAKING RULE 2004 EXAMINATION *DUCES TECUM*

    **ARTURO GARCIA** ("Debtor"), by and through undersigned counsel, provides this *Verified Response to Payability Commercial Factors, LLC's Request for Documents Pursuant to Re-Notice of Taking Rule 2004 Examination Duces Tecum* [D.E. 21] and in response to the documents requested in the *duces tecum* states as follows:

1. On February 2, 2018, the Debtor produced his driver's license to the Creditor.

2. The Debtor ordered all credit card statements. As of today, the Debtor has not received any statements from any account listed on Schedule F. On February 4, 2018, Debtor's Counsel ordered all account statements listed on Schedule F on the Debtor's behalf. As of today, Debtor's Counsel has not received any statements from the Debtor's creditors.

3. The Debtor has not owned real property in the past six years.

4. The Debtor has not owned real property in the past six years.

5. The Debtor has not owned real property in the past six years.

6. The Debtor has not owned real property in the past six years.

7. The Debtor has not owned real property in the past six years.

8. The Debtor has not had a retirement plan in the last four years.

9. Bank Statements: Production of the bank statements was delayed because the Debtor had to order the requested bank statements from each bank. It took several weeks and several phone calls for the banks to produce the requested statements. The Debtor does not use checks to make payments.

    a. Citibank Checking #0059: On February 2, 2018, all responsive bank statements

# EXHIBIT "B"

were turned over.

b. TD Bank Checking #7202: On February 2, 2018, all responsive bank statements were turned over.

c. US Bank Checking #0332: On January 31, 2018, bank statements from July 25, 2017 through October 31, 2017 were turned over. On February 2, 2018, bank statements from May 20, 2017 through December 21, 2017 were turned over.

d. US Bank Checking #3927: On January 31, 2018, all responsive bank statements were turned over.

e. Wells Fargo Checking #8506: On February 7, 2018, all responsive bank statements were turned over.

f. Chase Checking #8813: On February 7, 2018, all responsive bank statements were turned over.

g. Chase Checking #7636 (business account): On February 2, 2018, all responsive bank statements were turned over.

h. Chase Checking #9252 (business account): On February 2, 2018, all responsive bank statements were turned over.

i. Chase Checking #1206 (business account): On February 2, 2018, all responsive bank statements were turned over

j. Chase Checking #6360 (business account): On January 31, 2018, all responsive bank statements were turned over.

10. The Debtor does not have a passport.

11. All insurance binders have been produced.

12. The Debtor ordered all credit card statements. As of today, the Debtor has not received any statements from any account listed on Schedule F. On February 4, 2018, Debtor's Counsel ordered all account statements listed on Schedule F on the Debtor's behalf. As of today, Debtor's Counsel has not received any statements from the Debtor's creditors.

13. The Debtor ordered all charge account statements. As of today, the Debtor has not received any statements from any account listed on Schedule F. On February 4, 2018, Debtor's Counsel ordered all account statements listed on Schedule F on the Debtor's behalf. As of today, Debtor's Counsel has not received any statements from the Debtor's creditors.

14. The Debtor ordered all line of credit statements. As of today, the Debtor has not received any statements from any account listed on Schedule F. On February 4, 2018, Debtor's Counsel ordered all account statements listed on Schedule F on the Debtor's behalf. As of today, Debtor's Counsel has not received any statements from the Debtor's creditors.

15. On February 2, 2018, the Debtor gave access to the Debtor's business QuickBooks program. On February 7, 2018, the Debtor produced a backup file for his QuickBooks files. Inventory list and Schedules reflecting the Debtor's assets were filed on October 31, 2017.

16. The Debtor does not have any documents reflecting the nature of the goods or services purchased or obtained with the credit cards and credit line debts he has incurred in his possession, custody or control.

17. On February 2, 2018, the Debtor turned over all documents in his possession, custody or control that related to his business including his QuickBooks files and bank statements.

18. The Debtor has not filed tax returns in over 5 years. Financial statements, general ledgers, accounts receivable and payable report for any business the Debtor owned were turned over via his QuickBooks files.

19. All personal property was listed on the Debtor's inventory. For any personal property (vehicles) that the Debtor no longer has in his possession, the Debtor has provided a detailed explanation as to why the property is no longer in his possession. The Debtor does not have additional documents in his possession, custody or control.

20. The Debtor has not owned real property in the last four years.

21. The Debtor has not owned real property in the last four years.

22. The Debtor has not owned real property in the last four years.

23. The Debtor has not transferred any personal property to any family member during the four years prior to the Petition Date.

24. The Debtor has not transferred any personal property to an insider during the four years prior to the Petition Date.

25. The Debtor has not transferred any real property to an insider in the past four years prior to filing Bankruptcy.

26. On February 2, 2018, the Debtor provided all documents in his possession, custody or control related to the Business.

27. The only documents the debtor has in his possession, custody or control that are related to his source of income are his bank statements and QuickBooks files which have already been produced.

28. The Debtor has not transferred property in the past four years, other than property transferred in the ordinary course of business.

29. On January 31, 2018 and February 2, 2018, the production of documents to Payability Commercial Factors, LLC included all documents produced to the Chapter 7 Trustee.

30. On February 2, 2018, all financial statements that the Debtor has had in his possession, custody or control were produced.

31. The Debtor has not filed tax returns in the past five years.

32. On February 7, 2018, the Debtor produced his 1099 for 2017.

33. All bank statements have been produced and an amendment was filed on February 12, 2018 for any bank account that was not included in the original Petition.

34. On January 31, 2018, all photographs of the Debtor's household goods and furnishings were produced.

35. On January 31, 2018, all photographs of the Debtor's personal property were produced.

36. On January 31, 2018, all photographs of the Debtor's jewelry were produced.

37. On February 2, 2018, the Debtor produced all insurance binders.

38. On February 2, 2018, the Debtor produced all documents related to his vehicles.

39. On February 2, 2018, the Debtor produced an explanation of any vehicle he has had in the past four years leading up to the petition date and no longer has possession of.

40. The Debtor ordered all credit card statements. As of today, the Debtor has not received any statements from any account listed on Schedule F. On February 4, 2018, Debtor's Counsel ordered all account statements listed on Schedule F on the Debtor's behalf. As of today, Debtor's Counsel has not received any statements from the Debtor's creditors.

41. The Debtor ordered all charge card statements. As of today, the Debtor has not received any statements from any account listed on Schedule F. On February 4, 2018, Debtor's Counsel ordered all account statements listed on Schedule F on the Debtor's behalf. As of today, Debtor's Counsel has not received any statements from the Debtor's creditors.

42. The Debtor ordered all line of credit statements. As of today, the Debtor has not received any statements from any account listed on Schedule F. On February 4, 2018, Debtor's

Counsel ordered all account statements listed on Schedule F on the Debtor's behalf. As of today, Debtor's Counsel has not received any statements from the Debtor's creditors.

43. On February 2, 2018, the Debtor gave access to the Debtor's business QuickBooks program. On February 7, 2018, the Debtor produced a backup file for his QuickBooks files. Inventory list and Schedules reflecting the Debtor's assets were filed on October 31, 2017.

44. The Debtor does not have any documents reflecting the nature of the goods or services purchased or obtained with his credit cards and credit line debts he has incurred in his possession, custody or control.

45. An inventory list was filed on October 31, 2017. The Debtor has not transferred any assets in the last two years.

46. The Debtor used income he received from his employer to pay for his bankruptcy.

## DEBTOR'S VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury the foregoing is true and correct on February 20, 2018.

Debtor—Arturo Garcia

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on this 20th day of February 2018 via Regular U.S. mail to Arturo Garcia, Debtors, 5802 Jefferson St, Hollywood, Fl. 33023, and via CM/ECF to Mark Roher, Counsel for Payability Commercial Factors, LLC.

| | |
|---|---|
| **CERTIFICATE PURSUANT TO LOCAL RULE 9011-4(B)** | **KINGCADE & GARCIA, P.A**<br>Counsel for the Debtor<br>Kingcade Building<br>1370 Coral Way • Miami, Florida 33145-2960<br>Telephone: 305-285-9100 • Facsimile: 305-285-9542 |
| **I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A). | /s/ Timothy S. Kingcade<br>x  Timothy S. Kingcade, Esq., FBN 082309<br>☐ Wendy Garcia, Esq., FBN 0865478<br>☐ Jessica L. McMaken, Esq., FBN 580163 |

1/4/2019    In re WEISENFELD | Bankr. Court, SD Florida 2011 - Google Scholar

Case 18-01153-RBR   Doc 34   Filed 01/22/19   Page 28 of 34

**In re: JOSEPH J. WEISENFELD, Chapter 7, Debtor.**

**BARRY E. MUKAMAL, TRUSTEE, Plaintiff,**

**v.**

**JOSEPH J. WEISENFELD, Defendant.**

Case No. 08-22389-BKC-AJC, No. 09-2526-BKC-AJC-A.

**United States Bankruptcy Court, S.D. Florida.**

March 18, 2011.

# MEMORANDUM OPINION AND ORDER (1) GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS II, III & VIII OF COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE AND (2) DENYING DEBTOR'S DISCHARGE

A. JAY CRISTOL, Bankruptcy Judge.

THIS MATTER came before the Court on February 10, 2011 at 10:30 a.m. for hearing (the "Hearing") upon *Plaintiff's Motion for Judgment on the Pleadings as to Counts II, III and VIII of Complaint Objecting to Debtor's Discharge and Incorporated Memorandum of Law* (D.E. 42)(the "Motion"), filed by Plaintiff, Barry E. Mukamal, as Chapter 7 Trustee of the Bankruptcy Estate of Joseph J. Weisenfeld (the "Plaintiff" or the "Trustee") against the Debtor, Joseph J. Weisenfeld (the "Debtor" or the "Defendant"). The Court, having reviewed and considered the (i) Motion, (ii) *Complaint* (D.E. 1), (iii) *Debtor's Amended and Restated Answer and Affirmative Defenses* (D.E. 35)(the "Amended Answer"), (iv) this Court's *Order on Plaintiff's Motion for Judgment on the Pleadings as to Counts II, III and VIII of Complaint Objecting to Debtor's Discharge and Incorporated Memorandum of Law* (D.E. 51)(the "February 15th Order"), (v) *Debtor's Motion for Enlargement of Time* (D.E. 54)(the "Debtor's Motion to Enlarge"), (vi) this Court's *Order Granting Motion for Enlargement of Time* (D.E. 55)(the "March 1st Order") and (vii) the Court file; having heard argument of Trustee's counsel at the Hearing; and noting no filed opposition thereto; and for the reasons set forth on the record at the Hearing, which are incorporated herein by reference, grants the Motion.

## FACTS

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. The relief sought in the Complaint is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). The statutory predicates for the relief granted herein are Sections 105, 521 and 727 of the Bankruptcy Code, and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 4002, 4004, 4005, 4006 and 7001(4).

3. Upon review of the Certificates of Service of (i) the Motion, (ii) the Notice of Hearing of the Motion (D.E. 44), (iii) the Re-Notice of Hearing of the Motion (D.E. 49), (iv) the February 15th Order (D.E. 52) and (v) the March 1st Order (D.E. 56), the Court finds that the Debtor was properly and timely served with sufficient notice of the Motion and the Hearing.

4. After a preliminary hearing on the Motion regarding the Trustee's entitlement to the relief sought in the Motion, the Court provided the Debtor an opportunity, post-Hearing, to (a) file a response in opposition to the Motion and/or (b) a competing order denying the Motion. *See* February 15th Order at ¶ 2. Additionally, this Court granted the Debtor's Motion to Enlarge, allowing the Debtor additional time within which to file a pleading in opposition to the Motion. *See* March 1st Order. Notwithstanding proper and timely notice of the Motion and the Hearing, the Debtor has not filed a substantive response to the Motion.

## BACKGROUND

EXHIBIT "C"

1/4/2019      IN RE WEISENFELD Bankr. Court, SD Florida 2011 - Google Scholar

Case 18-01153-RBR   Doc 34   Filed 01/22/19   Page 29 of 34

5. The underlying bankruptcy case (the "Main Case") was commenced with the filing of an involuntary Chapter 7 bankruptcy petition against the Debtor on August 28, 2008 (the "Petition Date") by Chicago Title Insurance Company ("Chicago Title").

6. On December 29, 2008, the Debtor filed his *Consent to Entry of Order of Relief in Involuntary Petition* (Main Case D.E. 47), and on December 31, 2008, an *Order for Relief* was entered (Main Case D.E. 48).

7. On January 8, 2009, Barry E. Mukamal was appointed as Chapter 7 trustee of the Debtor's bankruptcy estate (Main Case D.E. 51).

8. On January 15, 2009, the Debtor filed, among other required pleadings and papers in the Main Case, his Schedules and Statement of Financial Affairs, which he signed under penalty of perjury (Main Case D.E. 61).

9. On August 28, 2008, Chicago Title also filed an involuntary Chapter 7 bankruptcy petition against Weisenfeld & Associates, P.A. ("WAPA"), which was assigned Case No. 08-22384-BKC-AJC (the "WAPA Case")(WAPA Case D.E. 1).

10. On December 22, 2008, WAPA filed its *Consent to Entry of Order of Relief in Involuntary Petition* (WAPA Case D.E. 33), and on December 23, 2008, an *Order for Relief* was entered in the WAPA Case (WAPA Case D.E. 34).

11. On January 7, 2009, WAPA filed its Schedules and Statement of Financial Affairs and Declaration Under Penalty of Perjury, which were signed by the Debtor, as WAPA's president and sole shareholder, under penalty of perjury (WAPA Case D.E. 39 & 41).

12. On January 8, 2009, Barry E. Mukamal was appointed as Chapter 7 trustee of the bankruptcy estate of WAPA (WAPA Case D.E. 42).

13. On December 20, 2009, the Trustee filed his *Complaint Objecting to Debtor's Discharge* (D.E. 1), which seeks denial of the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), 727(a)(4)©, 727(a)(4)(D), 727(a)(5), 727(a)(6)(A) and 727(a)(7).

14. On September 12, 2010, the Debtor filed his *Amended and Restated Answer and Affirmative Defenses to the Complaint* (D.E. 35)(the "Amended Answer").

15. Trial has not yet been set in this case.

16. By and through the Motion, Plaintiff seeks entry of judgment on the pleadings as to Count II (denial of discharge pursuant to 11 U.S.C. § 727(a)(3)), Count III (denial of discharge pursuant to 11 U.S.C. § 727(a)(4)(A)) and Count VIII (denial of discharge pursuant to 11 U.S.C. § 727(a)(7)) of the Complaint.

## UNDISPUTED FACTS

## A. In General

17. Prior to his disbarment and incarceration, the Debtor was an attorney. See Complaint, at ¶ 10; Amended Answer, at ¶ 10.

18. The Debtor conducted his law practice through WAPA, and was WAPA's sole officer, director and shareholder. *See* Complaint, at ¶ 11; Amended Answer, at ¶ 11.

19. On December 19, 2008, the District Court[1] entered its *Judgment in a Criminal Case,* adjudicating the Debtor guilty of wire fraud, and sentencing the Debtor to sixty-three (63) months in federal prison. *See* Complaint, at ¶ 16; Amended Answer, at ¶ 16.

20. On February 25, 2009, the District Court entered its *Amended Judgment in the Criminal Case,* which ordered the Debtor to pay restitution of $2,809,637.09 to his victims. *See* Complaint, at ¶ 17; Amended Answer, at ¶ 17.

21. The Debtor began his incarceration on or about April 2, 2009. *See* Complaint, at ¶ 19; Amended Answer, at ¶ 19.

1/4/2019     IN RE WEISENFELD Bankr. Court, SD Florida 2011 - Google Scholar

Case 18-01153-RBR   Doc 34   Filed 01/22/19   Page 30 of 34

## B. Admissions by Debtor in Amended Answer

22. The Debtor admits that his Statement of Financial Affairs (Main Case D.E. 61)(the "SOFA") reflects that he had not prepared or filed his personal income tax returns for 2006, 2007 and 2008. *See* Complaint, at ¶ 81; Amended Answer, at ¶ 81.

23. The SOFA lists $0.00 income for the two years prior to the Petition Date (Main Case D.E. 61, at p. 36).

24. The Debtor admits that his primary source of income for 2006 and 2007 was from WAPA. *See* Complaint, at ¶ 83; Amended Answer, at ¶ 83.

25. The Debtor admits that he was the sole shareholder of WAPA, and was the person responsible for maintaining WAPA's books and records. *See* Complaint, at ¶ 84; Amended Answer, at ¶ 84.

26. The Debtor admits that WAPA did not file Federal Income Tax Returns for 2006, 2007 or 2008. *See* Complaint, at ¶ 86; Amended Answer, at ¶ 86.

27. The Debtor testified ("to the best of his recollection") during his January 26, 2009 Section 341 Meeting of Creditors, that (i) his schedules and/or statement of financial affairs, and (ii) WAPA's schedules and/or statement of financial affairs required "further clarification," and the Debtor's former counsel advised the Trustee, on the record at the 341 Meeting, that amendments in the Main Case would be filed "in the next few days." *See* Complaint, at ¶ 66; Amended Answer, at ¶ 66.

28. The Debtor admits that he failed to schedule a transaction wherein he sold land in Polk County, Florida (the "Polk County Land Sale"). *See* Complaint, at ¶ 68; Amended Answer, at ¶ 68.

29. The Debtor's SOFA does not disclose the Polk County Land Sale (Main Case D.E. 61, at p. 39).

30. The Debtor admits that he surrendered stock he owned in Plus International Bank (the "Plus Bank Stock Transfer"). *See* Complaint, at ¶ 69; Amended Answer, at ¶ 69.

31. The Debtor's SOFA does not disclose the Plus Bank Stock Transfer. *See* Main Case DE 61, at p. 39.

32. The Debtor admits that he refinanced his home and the proceeds from the refinancing were deposited into an undisclosed account with Gibraltar Bank & Trust (checking account X8561) (the "Unscheduled Gibraltar Bank Account"). *See* Complaint, at ¶ 79; Amended Answer, at ¶ 79.

33. The Unscheduled Gibraltar Bank Account is not listed on Schedule "B." *See* Main Case D.E. 61, at p. 9.

34. The Debtor admits that, after he refinanced his home, he transferred $200,000.00 of the net refinancing proceeds from the Unscheduled Gibraltar Bank Account to Antoine Ballan on March 17, 2008, as repayment of an alleged loan from Mori Management and Investments, Inc. to the Debtor and/or WAPA, secured by an unrecorded mortgage on the Debtor's home (the "Refi Transfer"). *See* Complaint, at ¶¶ 70, 73 & 97; Amended Answer, at ¶¶ 70, 73 & 97.

35. The Debtor's SOFA does not disclose the Refi Transfer. *See* Main Case D.E. 61, at p. 39.

36. The Debtor admits that he has failed to amend his Schedules and SOFA to disclose: (i) the Unscheduled Gibraltar Bank Account; (ii) the Polk County Land Sale; (iii) the Plus Bank Stock Transfer; and (iv) the Refi Transfer. *See* Complaint, at ¶¶ 76 & 80; Amended Answer, at ¶¶ 76 & 80.

37. The Debtor admits that his Schedule "I" reflects $0.00 monthly income, his Bankruptcy Schedule "J" reflects $11,071.00 in monthly expenditures and a monthly deficit of $11,071.00 and that his bankruptcy schedules do not contain any explanation of how the Debtor and his wife paid their basic day to day living expenses. *See* Complaint, at ¶¶ 93-95; Amended Answer, at ¶¶ 93-95.

38. The Debtor signed and filed his bankruptcy schedules and SOFA under penalty of perjury (Main Case DE 61, at pp. 35 & 43).

39. The Debtor admits that Line 16 of WAPA's Schedule "B" entitled "Accounts Receivable" states "Debtor has been without staff and power supply from July, 2008. There was work in process that could potentially be billed but there was no way to

produce said billing. It is estimated that the aggregate amount would be between $75,000.00 and $150,000.00 but this is for work completed some time ago so therefore collectibility is questionable." *See* Complaint, at ¶ 57; Amended Answer, at ¶ 57; WAPA Schedule "B."

40. The Debtor admits that WAPA has not filed 2006, 2007 or 2008 Federal Income Tax Returns. *See* Complaint, at ¶¶ 59 & 86; Amended Answer, at ¶¶ 59 & 86.

41. The Debtor admits that his primary source of income for 2006 and 2007 was WAPA. *See* Complaint, at ¶ 83; Amended Answer, at ¶ 83.

42. The Debtor admits that, as the sole shareholder of WAPA, he was the person responsible for maintaining WAPA's books and records. *See* Complaint, at ¶ 84; Amended Answer, at ¶ 84.

# CONCLUSIONS OF LAW

## I. APPLICABLE STANDARD FOR ENTRY OF JUDGMENT ON THE PLEADINGS

Rule 12(c) of the Federal Rules of Civil Procedure provides that, "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). Bankruptcy Rule 7012 incorporates Rule 12© of the Federal Rules of Civil Procedure into adversary proceedings. Fed.R.Bankr.P. 7012.

Judgment on the pleadings under Rule 12© is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts. <u>Horsley v. Rivera</u>, 292 F.3d 695, 700 (11th Cir. 2002) (citing <u>Hawthorne v. Mac Adjustment, Inc.</u>, 140 F.3d 1367, 1370 (11th Cir.1998)). Dischargeability actions may be appropriately decided by way of a motion for judgment on the pleadings. *See, e.g.,* <u>Bulter v. Liu (In re Liu)</u>, 288 B.R. 155 (Bankr. N.D. Ga. 2002).

## II. JUDGMENT ON COUNT II OF THE COMPLAINT UNDER 11 U.S.C. § 727(a) (3)

Section 727(a)(3) of the Bankruptcy Code states as follows:

(a) The court shall grant the debtor a discharge, unless —

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which he debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

"The purpose of section 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of a debtor's affairs and to test the completeness of the disclosure requisite to a discharge." <u>In re Greene</u>, 340 B.R. 93, 98 (Bankr. M.D. Fla. 2006) (citing <u>PNC Bank v. Buzzelli (In re Buzzelli)</u>, 246 B.R. 75, 95 (Bankr. W.D. Pa. 2000) (citing <u>Meridian Bank v. Alten</u>, 958 F.2d 1226, 1230 (3rd Cir. 1992)). "This statute also ensures that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." <u>Buzzelli</u>, 246 B.R. at 95.

The elements of a section 727(a)(3) claim are simple and concise: (1) the creditor must prove that the debtor failed to keep or preserve records; and (2) such failure was not reasonable under the circumstances and this failure makes it impossible to ascertain the debtor's true financial condition or business transactions. <u>In re Henderson</u>, 423 B.R. 598, 616 (Bankr. N.D.N.Y. 2010) (internal citations omitted). All records that are necessary to understand a debtor's financial condition are within the scope of this section. *Id.* at 616-17 (citing <u>Buckeye Ret. Co. v. Bishop (In re Bishop)</u>, 420 B.R. 841, 847 (Bankr. N.D. Ala. 2009)); <u>Serv. Liquor Dists., Inc. v. Gudowitz (In re Gudowitz)</u>, 1986 WL 28906, 1986 Bankr. LEXIS 5735 (Bankr. S.D.N.Y.

1/4/2019    IN RE WESTENFELD, Bankr. Court, MD Florida 2011 - Google Scholar

Case 18-01153-RBR   Doc 34   Filed 03/22/19   Page 32 of 34

July 8, 1986) (all books and materials which shed light on what was done with a debtor's estate and the factors which led to the filing for relief are material to a § 727(a)(3) analysis).

In a personal bankruptcy case, "the quintessential documents that must be preserved and kept are debtor's income tax returns." *Henderson,* 423 B.R. at 617 (internal citation omitted); *see also,* 11 U.S.C. § 521(e)(2)(A) (debtor is statutorily obligated to provide the case trustee and creditors who request the same with a copy of his or her Federal tax return or transcript for the most recent tax year ending immediately before commencement of the case) and 11 U.S.C. § 521(f) (debtor is statutorily obligated to file with the court late-filed Federal tax returns for years preceding the bankruptcy filing and future Federal tax returns for each tax year while the bankruptcy case is pending).

"A creditor objecting to a discharge under § 727(a)(3) has the initial burden of proving (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Buzzelli,* 246 B.R. at 95 (citing *Meridian Bank,* 958 F.2d at 1232). Once a creditor shows that a debtor's records are insufficient, the burden of going forward shifts to the debtor to justify such insufficiencies. *Buzzelli,* 246 B.R. at 96; *In re Greene,* 340 B.R. 93, 98-99 (Bankr. M.D. Fla. 2006). "Factors which may be considered by the court in making this factual determination include debtor's education, the sophistication of the debtor, debtor's business experience, the size and complexity of debtor's business, debtor's personal financial structure, and any special circumstances that may exist." *Id.*

The Trustee has met his burden under § 727(a)(3), but the Debtor has not. A debtor's tax returns are quintessential documents that enable a bankruptcy trustee and other creditors to be allowed to understand the financial condition of the debtor. The Debtor has not prepared or filed his personal Federal income tax returns for 2006, 2007 or 2008; and WAPA, the primary source of Debtor's income for 2006 and 2007, also did not file its Federal income tax returns for 2006, 2007 and 2008 — and it was the Debtor who was responsible for maintaining WAPA's book and records. The Debtor was a practicing attorney who possessed the necessary level of knowledge, education and sophistication to understand his legal obligation to file tax returns and the ramifications of his failure to do so. The Debtor did not begin his incarceration until April 2, 2009, approximately eight (8) months after the Petition Date. Within that period of time, the Debtor had the opportunity to prepare and file said tax returns, but did not do so. Moreover, the Debtor has provided no justification for failing to file 2006, 2007 and 2008 Federal income tax returns for himself and for WAPA.

The Debtor's failure to, among other things, file tax returns for himself and WAPA, and maintain accurate and complete books and records for WAPA, prevent the Trustee from ascertaining the true financial condition of the Debtor and WAPA and from properly administering the bankruptcy estates of the Debtor and WAPA. Accordingly, the Debtor's discharge is denied pursuant to 11 U.S.C. § 727(a)(3).

# III. JUDGMENT ON COUNT III OF THE COMPLAINT UNDER 11 U.S.C. 727(a)(4)(A)

Section 727(a)(4)(A) of the Bankruptcy Code provides as follows:

> (a) The court shall grant the debtor a discharge, unless —

> (4) the debtor knowingly and fraudulently, in or in connection with the case —

> (A) made a false oath or account

To deny a debtor's discharge under § 727(a)(4)(A), the Court must find that the debtor "knowingly made a false oath that was both fraudulent and material." *In re Unger,* 333 B.R. 461, 465 (Bankr. M.D. Fla. 2005) (internal citations omitted). The "[k]nowing failure to disclose information on schedules violates § 727(a)(4)(A) and empowers the court to deny discharge under that section." *In re Prevatt,* 261 B.R. 54, 59 (Bankr. M.D. Fla. 2000).

In this case, the Court concludes that the Debtor knowingly made false statements under oath. The Debtor failed to schedule the Unscheduled Gibraltar Bank Account on Schedule "B". The Debtor failed to disclose the following transfers in Paragraph 10 of his SOFA: (i) the Polk County Land Sale; (ii) the Plus Bank Stock Transfer; and (iii) the Refi Transfer. All of these omissions are admitted by the Debtor in his Amended Answer. "The subject matter of a false oath is `material' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the

discovery of assets, business dealings, or the existence and disposition of his property." *In re Eigsti*, 323 B.R. 778, 784 (Bankr. M.D. Fla. 2005) (internal citations omitted).

The Court concludes the Debtor's omissions are material in that they directly concern business transactions, the discovery of assets, business dealings and the existence and disposition of Debtor's property. The Court further concludes that Debtor has engaged in a pattern of concealment, or at the very least reckless indifference for the truth, by failing to schedule the Unscheduled Gibraltar Bank Account on Schedule "B" and by failing to disclose in Paragraph 10 of his SOFA: (i) the Polk County Land Sale; (ii) the Plus Bank Stock Transfer; and (iii) the Refi Transfer. The Debtor's omissions were material false oaths, involving substantial dollar amounts, that were knowingly made by the Debtor, thereby affecting the Trustee's administration of estate assets. This pattern of concealment evidences the fraudulent intent required under 11 U.S.C. § 727(a)(4).

"[M]ultiple inaccuracies in a debtor's petition and bankruptcy schedules taken cumulatively evidences a `cavalier disregard for the truth serious enough to supply the necessary fraudulent intent required by § 727(a)(4)(A).'" *In re Leffingwell*, 279 B.R. 328, 351 (Bankr. M.D. Fla. 2002) (quoting from *In re Hatton*, 204 B.R. 477, 484 (E.D.Va.1997)). In *Leffingwell*, after establishing fraudulent intent with the debtors' pattern of concealment, the court also concluded that the debtors' reckless indifference for the truth established fraudulent intent. *Id.* at 351-52. The debtors in *Leffingwell* attempted to explain their false oaths and omissions in their Schedules and Statement of Financial Affairs by claiming that the errors were inadvertent, a result of the debtors' ignorance of bankruptcy, and caused by the hurried manner in which these papers were prepared. *Id.* As both debtors were highly educated and accustomed to dealing with financial transactions, the court found that they understood the importance of ensuring that their paperwork was accurate and truthful. *Id.* The *Leffingwell* court concluded that even if the false oaths or omissions had been innocently made, "a debtor's failure to amend schedules `can be considered reckless indifference to the truth and is tantamount to fraud.'" *Id.* (quoting *In re Green*, 268 B.R. 628, 648 (Bankr. M.D. Fla. 2001)). The debtors in *Leffingwell* had not made any attempt to amend their petition or schedules to correct the false oaths and the court therefore held that the false oaths and omissions were made with fraudulent intent because of the debtors' reckless indifference to the truth. *Id.*

Similarly in this case, the Debtor admits that during his January 26, 2009 meeting of creditors, he acknowledged his Schedules and SOFA required further clarification and that amendments would be filed within the next few days. Amendments to the Debtor's Schedules or SOFA have never been filed. The Debtor in this case is a former attorney who has represented himself in this proceeding. He is highly educated and accustomed to dealing with financial transactions. While the Debtor, from prison, has filed pleadings, papers and objections in the Main Case, the WAPA Case and the instant adversary proceeding, he has yet to file an amendment to his Schedules or SOFA — which he admits in the Amended Answer, are inaccurate. Based upon the foregoing, the Court concludes that the false oaths and omissions in the Debtor's Schedules and SOFA were made with the requisite fraudulent intent, or reckless indifference to the truth constituting fraudulent intent. Accordingly, the Debtor's discharge is denied pursuant to 11 U.S.C. § 727(a)(4)(A).

# IV. JUDGMENT ON COUNT VIII OF THE COMPLAINT UNDER 11 U.S.C. § 727(a)(7)

Section 727(a)(7) of the Bankruptcy Code provides as follows:

(a) The court shall grant the debtor a discharge, unless —

(7) has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case under this title or under the Bankruptcy Act, concerning an insider.

The Debtor admits in his Amended Answer that he was the sole shareholder of WAPA, and was the person responsible for maintaining WAPA's books and records. Accordingly, WAPA is an insider of the Debtor pursuant to 11 U.S.C. § 101(31)(A)(iv).

Paragraph 1 of WAPA's SOFA requires the disclosure of income from operation of a business for a specified period of time. No such disclosure was made. Rather, Paragraph 1 of the WAPA SOFA simply states that, "Tax returns have not been prepared for the years 2006 or 2007; amount of income unknown." Additionally, in his capacity as WAPA's president and

1/4/2019 IN RE: WEISENFELD, Bankr. Court, SD Florida 2011 - Google Scholar

Case 18-01153-RBR Doc 34 Filed 01/22/19 Page 34 of 34

sole shareholder, the Debtor was unable to list one single account receivable on WAPA's Schedule "B." Rather, Line 16 of WAPA's Schedule "B" merely states that "Debtor has been without staff and power supply from July, 2008. There was work in process that could potentially be billed but there was no way to produce said billing. It is estimated that the aggregate amount would be between $75,000.00 and $150,000.00 but this is for work completed some time ago so therefore collectibility is questionable."

WAPA's failure to file tax returns and maintain accurate books and records has prevented the Trustee from ascertaining the true financial condition of WAPA; and, the Debtor has failed to offer any justification for failing to file the income tax returns and for failing to maintain accurate books and records, thus hindering the administration of WAPA's bankruptcy estate. Accordingly, the Debtor's discharge is denied pursuant to 11 U.S.C. § 727(a)(7).

## V. DEBTOR'S AFFIRMATIVE DEFENSES ARE INSUFFICIENT TO PRECLUDE ENTRY OF JUDGMENT

"An affirmative defense is defined as `[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true'". _Ayers v. Consol. Const. Services of SW Fla., Inc._, 2007 WL 4181910 (M.D. Fla. Nov. 26, 2007) (citing _Saks v. Franklin Covey Co._, 316 F.3d 337, 350 (2nd Cir. 2003)). If a defendant fails to allege an affirmative defense or if such defense fails as a matter of law, then judgment on the pleadings may be entered. _In re Mabbott_, 255 B.R. 787, 789 (Bankr. M.D. Fla. 2000).

Based upon careful review and consideration of the Debtor's seven (7) alleged affirmative defenses set forth in the Amended Answer, this Court concludes that none of the Affirmative Defenses are legally sufficient to preclude the entry of judgment on the pleadings in favor of the Trustee because they do not address new facts or arguments relative to Counts II, III and VIII of the Complaint. By way of example, none of the Affirmative Defenses address the Debtor's omission of the Unscheduled Gibraltar Bank Account on Schedule "B" and his admitted failure to disclose the (i) Polk County Land Sale, (ii) Plus Bank Stock Transfer, and (iii) Refi Transfer in Paragraph 10 of his SOFA. Likewise, none of the Affirmative Defenses address the Debtor's failure to file tax returns for himself or WAPA or otherwise address Debtor's failure to maintain business records.

Because each of the Affirmative Defenses asserted by the Debtor constitute mere denials of certain allegations and/or fail as a matter of law, the Trustee is entitled to entry of judgment on the pleadings as to Counts II, III and VIII of the Complaint. It is therefore

ORDERED AND ADJUDGED that the Motion is GRANTED and the Debtor's discharge is DENIED pursuant to 11 U.S.C. §§ 727(a)(3), 727(a)(4)(A) and 727(a)(7). In accordance with Rule 7058 of the Federal Rules of Bankruptcy Procedure, a separate judgment denying the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(3), 727(a)(4)(A) and 727(a)(7) shall be entered contemporaneously herewith.

ORDERED in the Southern District of Florida on March 18, 2011.

[1] All capitalized terms not otherwise defined in this Order shall have the meanings ascribed to it in the Complaint.

Save trees - read court opinions online on Google Scholar.